OPINION
{¶ 1} Plaintiff-appellant, Rev. Iyabo Nadra ("appellant"), appeals from the Franklin County Court of Common Pleas' entry of summary judgment in favor of defendants-appellees, Susan Mbah ("Mbah") and Mindy Grote ("Grote") (collectively "appellees"). For the following reasons, we affirm in part and reverse in part.
 {¶ 2} On February 25, 2005, appellant filed a civil complaint in the Franklin County Court of Common Pleas, purporting to allege claims of fraud against Mbah, a Franklin County Children Services ("FCCS") caseworker, and Grote, an FCCS intake worker. Appellant's claims arise from the removal of her minor son, M.M., from her custody on January 2, 2002, and the subsequent filing of a complaint in the Franklin County Court of Common Pleas, Division of Domestic Relations, Juvenile Branch, alleging that M.M. was an abused, neglected, and dependent child ("juvenile complaint").
 {¶ 3} The juvenile complaint, signed by Grote, was filed on January 3, 2002, in case No. 02JU01-97, and lists appellees, in their capacities as FCCS caseworker and intake worker, as the complainants. In addition to allegations that M.M. was an abused child, as defined by R.C.2151.031(D), a neglected child, as defined by R.C. 2151.03(A)(2) and (A)(6), and a dependent child, as defined by R.C. 2151.04(C), the juvenile complaint set forth particular facts upon which such allegations were based. The juvenile complaint alleges that FCCS received referrals on or about December 19, 2001 and January 2, 2002, reporting that appellant was locking M.M. in the basement as punishment, with a cot for sleeping and a bucket to use as a toilet. The second referral reported that M.M. was being chained to a pole in the basement and that appellant fed M.M. once a day and withheld food depending on M.M.'s behavior. As a result of such referrals, FCCS, accompanied by the Columbus Police Department, obtained entrance to appellant's home on January 2, 2002, where they found M.M. locked in the basement with a cot, a bucket, and a chain attached to a pole. The home's electricity had been off for a week. According to the complaint, M.M. stated that he had to stay in the basement all day, that he sometimes had to sleep in the basement, and that he was sometimes chained to a pole by his wrist. M.M.'s 17-year-old sibling confirmed M.M.'s report, and appellant did not deny the form of punishment she inflicted on M.M. Columbus Police Department personnel removed M.M. from the home. The juvenile complaint prayed for disposition, including, but not limited to, an order of temporary custody or permanent commitment.
 {¶ 4} The juvenile court initially granted temporary custody of M.M. to FCCS. However, on August 20, 2002, the juvenile court entered judgment, terminating FCCS's temporary custody of M.M., maintaining a wardship over M.M., and awarding legal custody of M.M. to his father.
 {¶ 5} Appellant was arrested on June 13, 2002, and was indicted on charges of child endangering, abduction, and kidnapping. On November 12, 2003, a jury returned a verdict of not guilty on the abduction and kidnapping charges but could not reach a verdict on the child endangering charge. On March 22, 2004, the trial court, in appellant's criminal case, granted a Crim.R. 29 motion for acquittal on the charge of child endangering and entered judgment acquitting appellant of all indicted charges.
 {¶ 6} In her civil complaint, appellant alleges that the allegations in the juvenile complaint were false and that appellees violated R.C.2151.44[1] by filing it. Appellant also alleges that appellees violated R.C. 2151.419[2] by failing to return M.M. to her custody after the dismissal of criminal charges against her. Appellant alleges that appellees' actions:
 * * * [C]aused [her] to [lose] her minor child [M.M.], monetary support from the Social Security benefits, their family dwelling, and subsidies from the Franklin County Public Housing Program, a decline in her health as a result of 5 ½ months incarceration, denial of her right to family obligation, and her moral standing in the community as a law abiding citizen.
 {¶ 7} Appellees filed an answer to appellant's complaint on April 7, 2005, admitting:
 * * * [T]hat law enforcement transported [M.M.] to Franklin County Children Services Intake Center on January 2, 2002 and that an investigation began at that time. Defendants further admit that an emergency court order was granted on January 3, 2002, that a temporary order of the court was granted on January 4, 2002, and that a temporary court commitment was eventually granted. Defendants further admit that Susan Mbah was the intake worker who handled the [M.M.] referral, that a NetCare assessment was performed, and that [M.M.'s] father was granted supervised visitation on April 2, 2002.
Appellees denied the remaining allegations in appellant's complaint for lack of sufficient knowledge and information. Appellees also asserted various affirmative defenses, including failure to state a claim upon which relief could be granted and immunity. On August 26, 2005, the trial court granted appellees leave to amend their answer to raise the statute of limitations as an additional affirmative defense.
 {¶ 8} On November 28, 2005, appellees filed a motion for summary judgment, in response to which appellant filed a memorandum contra on December 27, 2005. Appellees argued that appellant's claims were barred by the two-year statute of limitations applicable to actions for damages against a political subdivision, as set forth in R.C. 2744.04(A). Appellees also argued that, if the trial court deemed appellant's complaint to assert claims pursuant to Section 1983, Title 42, U.S. Code ("Section 1983"), such claims were likewise subject to a two-year statute of limitations and time-barred. Additionally, appellees argued that they were immune from liability, pursuant to R.C. 2151.421(G), as persons who participated in good faith in a judicial proceeding resulting from a report of child abuse or neglect, and that they were entitled to qualified immunity for the exercise of discretionary functions as FCCS employees.
 {¶ 9} On March 30, 2006, the trial court partially granted appellees' motion for summary judgment. After noting the R.C. 2744.04(A) two-year statute of limitations and agreeing with appellees' assertion that any Section 1983 claims were also subject to a two-year statute of limitations, the trial court concluded that appellant's claims, arising from the removal of M.M. and the filing of the juvenile complaint in January 2002, were time-barred. However, the trial court found that the evidence did not demonstrate that appellant's claim alleging appellees' ongoing failure to return M.M. to her custody was time-barred. Lastly, the trial court stated that the record contained insufficient evidence to evaluate appellees' entitlement to immunity. Accordingly, the trial court granted appellees' motion for summary judgment with respect to appellant's claims arising out of appellees' conduct in January 2002, and denied appellees' motion for summary judgment with respect to appellant's claims arising out of appellees' alleged failure to restore appellant's custody of M.M.
 {¶ 10} On May 4, 2006, the trial court granted appellees leave to file a second motion for summary judgment, which appellees filed on May 10, 2006. In their second motion for summary judgment, appellees argued that appellant's claim based on the failure to return M.M. was time-barred because FCCS's temporary custody of M.M. terminated on August 20, 2002, when the juvenile court awarded legal custody of M.M. to his father. In support of their motion, appellees submitted a certified copy of the juvenile court's judgment entry. Appellant filed a memorandum contra appellees' second motion for summary judgment on May 30, 2006. While appellant did not dispute that FCCS's temporary custody of M.M. terminated on August 20, 2002, she argued that the limitations period on her claims should have been tolled based on her continuing harm.
 {¶ 11} On June 27, 2006, before the trial court ruled on appellees' second motion for summary judgment, appellant filed a motion for default judgment. Appellant argued that she was entitled to default judgment, pursuant to Civ.R. 55, based on appellees' failure to file a reply memorandum in support of their second motion for summary judgment.
 {¶ 12} The trial court denied appellant's motion for default judgment and granted appellees' second motion for summary judgment on July 20, 2006. The trial court concluded that any conduct that might serve as the basis of a claim regarding FCCS's failure to return M.M. ceased no later than August 20, 2002, upon the termination of FCCS's temporary custody. The trial court also rejected appellant's tolling argument, stating that "the statute of limitations is not tolled by continued suffering, but only by continuing conduct." Accordingly, the trial court concluded that appellant's complaint was time-barred in its entirety and entered final judgment in favor of appellees.
 {¶ 13} Appellant filed a timely notice of appeal and assigns the following as error:
 The trial court erred by partially granting defendants' motion for summary judgment, granting final judgment for motion for summary judgment in favor of defendants, overlooking Pro Se Standard of Review and various genuine issues of material fact entered by Plaintiff throughout the Court Record, and denial of the Plaintiff's Motion for Default Judgment, when the record presents genuine issues of material fact that demand resolution by the trier of fact.
Appellant contends that the trial court erred by granting summary judgment in favor of appellees and by denying her motion for default judgment. Appellant also contends that the trial court erred by not applying a "Pro Se Standard of Review[.]" Before reviewing the propriety of the trial court's entry of summary judgment, we briefly address appellant's arguments concerning the standard of review and her motion for default judgment.
 {¶ 14} At the outset, we reject appellant's contention that she was entitled to a different standard of review based on her status as a pro se litigant. In her appellate brief, appellant cites a litany of federal cases suggesting that, when considering a motion to dismiss a complaint for failure to state a claim upon which relief can be granted, federal courts hold pro se complaints to less stringent standards than formal pleadings drafted by lawyers. See Haines v. Kerner (1972), 404 U.S. 519,520-521. Even if such case law were applicable to this court, the cited cases are distinguishable. Here, the trial court did not dismiss appellant's complaint for failure to state a claim. Rather, the trial court granted appellees' motion for summary judgment. Unlike a motion to dismiss for failure to state a claim upon which relief can be granted, where the court's review is limited to the allegations in the complaint, a motion for summary judgment provides the plaintiff the opportunity to present evidence in support of the allegations in her complaint.
 {¶ 15} This court has routinely rejected the notion that pro se litigants are entitled to lenient treatment with respect to procedural law and court rules. In Justice v. Lutheran Social Servs. of Cent.Ohio (Apr. 8, 1993), Franklin App. No. 92AP-1153, this court succinctly stated:
 * * * While one has the right to represent himself or herself and one may proceed into litigation as a pro se litigant, the pro se
litigant is to be treated the same as one trained in the law as far as the requirement to follow procedural law and the adherence to court rules. If the courts treat pro se litigants differently, the court begins to depart from its duty of impartiality and prejudices the handling of the case as it relates to other litigants represented by counsel.
See, also, McNeil v. United States (1993), 508 U.S. 106, 113 ("we have never suggested that procedural rules in ordinary civil litigation should be interpreted so as to excuse mistakes by those who proceed without counsel"). Thus, the fact that appellant is acting pro se "is immaterial because a pro se person `is held to the same rules, procedures and standards as those litigants represented by counsel and must accept the results of her own mistakes and errors.' " Dailey v. R J Commercial Contracting, Franklin App. No. 01AP-1464, 2002-Ohio-4724, at ¶ 17, quoting Dornbirer v. Paul (Aug. 19, 1997), Franklin App. No. 96APE11-1560. The trial court aptly cautioned appellant of the risks presented by representing herself, warning her that "[f]ailure to follow proper procedures or to inform this Court of relevant legal authority can result in judgment being entered against a party. Unrepresented parties are not given special consideration because of their lack of counsel." Accordingly, we find no error based on the trial court's purported failure to apply a "pro se standard of review."
 {¶ 16} We next turn to appellant's contention that the trial court erred in denying her motion for default judgment, premised on appellees' failure to file a reply memorandum in support of their second motion for summary judgment. Appellant's motion demonstrates a basic misunderstanding of the concept of default, which the Ohio Supreme Court has discussed at length:
 * * * Default * * * is a clearly defined concept. A default judgment is a judgment entered against a defendant who has failed to timely plead in response to an affirmative pleading. McCabe v. Tom (1929), 35 Ohio App. 73. As stated by the court in Reese v. Proppe (1981), 3 Ohio App.3d 103, 105, "[a] default by a defendant * * * arises only when the defendant has failed to contest the allegations raised in the complaint and it is thus proper to render a default judgment against the defendant as liability has been admitted or `confessed' by the omission of statements refuting the plaintiff's claims. * * *" It is only when the party against whom a claim is sought fails to contest the opposing party's allegations by either pleading or "otherwise defend[ing]" that a default arises. This rule * * * is logically consistent with the general rule of pleading contained in Civ.R. 8(D), which reads in part that "[a]verments in a pleading to which a responsive pleading is required * * * are admitted when not denied in the responsive pleading."
Ohio Valley Radiology Assoc, Inc. v. Ohio Valley Hosp. Assn. (1986),28 Ohio St.3d 118, 121. The Ohio Supreme Court subsequently clarified that, "when a case is at issue because a defendant has filed an answer, there can be no default judgment." Disciplinary Counsel v. Jackson (1998),81 Ohio St.3d 308, 311. Here, appellees contested the allegations in appellant's complaint in their answer and defended by filing two motions for summary judgment. Appellees were clearly not in default, and the trial court appropriately denied appellant's motion for default judgment.
 {¶ 17} Finally, we turn to appellant's contention that the trial court erred by granting summary judgment in favor of appellees. Appellate review of summary judgments is de novo. Koos v. Cent. Ohio Cellular,Inc. (1994), 94 Ohio App.3d 579, 588, citing Brown v. Scioto Cty. Bd. ofCommrs. (1993), 87 Ohio App.3d 704, 711. When an appellate court reviews a trial court's disposition of a summary judgment motion, it applies the same standard as the trial court and conducts an independent review, without deference to the trial court's determination. Maust v. Bank OneColumbus, N.A. (1992), 83 Ohio App.3d 103, 107; Brown at 711.
 {¶ 18} Pursuant to Civ.R. 56(C), summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Accordingly, summary judgment is appropriate only where: (1) no genuine issue of material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) viewing the evidence most strongly in favor of the non-moving party, reasonable minds can come to but one conclusion, that conclusion being adverse to the non-moving party.Harless v. Willis Day Warehousing Co. (1978), 54 Ohio St.2d 64, 66.
 {¶ 19} "[T]he moving party bears the initial responsibility of informing the trial court of the basis for the motion, and identifying those portions of the record * * * which demonstrate the absence of a genuine issue of fact on a material element of the nonmoving party's claim." Dresher v. Burt (1996), 75 Ohio St.3d 280, 292. Once the moving party meets its initial burden, the non-movant must then produce competent evidence of the types listed in Civ.R. 56(C) showing that there is a genuine issue for trial. Id. at 293. Because summary judgment is a procedural device to terminate litigation, courts should award it cautiously after resolving all doubts in favor of the non-moving party.Murphy v. Reynoldsburg (1992), 65 Ohio St.3d 356, 358-359.
 {¶ 20} In their first motion for summary judgment, appellees argued that appellant's claims were time-barred by the two-year statute of limitations contained in R.C. 2744.04(A), which provides, in part, as follows:
 An action against a political subdivision to recover damages for injury, death, or loss to persons or property allegedly caused by any act or omission in connection with a governmental or proprietary function * * * shall be brought within two years after the cause of action arose, or within any applicable shorter period of time for bringing the action provided by the Revised Code. * * *
The limitations period in R.C. 2744.04(A) also applies to actions against employees of political subdivisions. Bojac Corp. v. Kutevac
(1990), 64 Ohio App.3d 368; Strahler v. Roby (Jan. 27, 1992), Washington App. No. 90 CA 25, citing Bojac; Read v. Fairview Park (2001),146 Ohio App.3d 15.
 {¶ 21} To the extent that appellant brings state law claims against appellees, as employees of FCCS, her claims are subject to the two-year statute of limitations contained in R.C. 2744.04(A). In her memorandum in opposition to appellees' first motion for summary judgment, appellant did not dispute that the R.C. 2744.04(A) statute of limitations applied to her claims. However, on appeal, appellant argues that her claims are subject to the four-year statute of limitations for fraud claims, as set forth in R.C. 2305.09(C). We reject that argument.
 {¶ 22} R.C. 1.51 provides the applicable rule of construction for dealing with conflicts between general and specific statutory provisions:
 If a general provision conflicts with a special or local provision, they shall be construed, if possible, so that effect is given to both. If the conflict between the provisions is irreconcilable, the special or local provision prevails as an exception to the general provision, unless the general provision is the later adoption and the manifest intent is that the general provision prevail.
Because the conflict between the statutes of limitations in R.C.2305.09(C) and 2744.04(A) is irreconcilable, the special statute of limitations for actions against political subdivisions and their employees, as set forth in R.C. 2744.04(A), prevails over the general statute of limitations for fraud actions. See Abdalla v. Olexia (1996),113 Ohio App.3d 756. Thus, the R.C. 2744.04(A) two-year statute of limitations applies to appellant's state law claims against appellees.
 {¶ 23} To determine whether appellant's claims were time-barred when she filed her complaint in February 2005, we must establish when appellant's claims accrued. "A cause of action ordinarily accrues, and the limitations period begins to run, when the violation giving rise to liability occurs." Lane v. Grange Mut. Cos. (1989), 45 Ohio St.3d 63,65. Despite allegations regarding proceedings in juvenile court, proceedings in appellant's criminal prosecution, and the alleged harm she suffered, appellant's complaint contains only limited allegations of conduct by appellees.
 {¶ 24} First, appellant premises at least part of her claims on appellees' filing of the juvenile complaint on January 2, 2002, at which time appellant's claims, based on such conduct, would have accrued. Appellant filed her complaint on February 25, 2005. Because more than two years had elapsed after appellant's claims, based on the filing of the juvenile complaint, accrued, reasonable minds could only conclude that such claims were time-barred. Accordingly, the trial court did not err in granting summary judgment on appellant's state law claims based on appellees' filing of the juvenile complaint.
 {¶ 25} Second, the trial court also found that appellant's complaint contained a claim based on appellees' failure to restore her custody of M.M. after the dismissal of the criminal charges against her. The trial court initially denied appellees' motion for summary judgment on such claim, stating that appellees failed to point to any evidence that the claim was time-barred. When appellees filed their second motion for summary judgment, they submitted a certified copy of a juvenile court judgment entry divesting FCCS of its temporary custody of M.M. and granting legal custody to M.M.'s father on August 20, 2002. Appellant did not dispute that FCCS's temporary custody of M.M. terminated in August 2002. Thus, any claim based on FCCS's failure to return custody to appellant would have accrued, at the latest, in August 2002, more than two years prior to appellant filing her complaint. Consequently, any claim based on such conduct was barred by the two-year statute of limitations contained in R.C. 2744.04(A).
 {¶ 26} In an attempt to save her claims from the bar of the statute of limitations, appellant argued in her memorandum in opposition to appellees' second motion for summary judgment, and argues again on appeal, that the limitations period on her claims was tolled. Appellant specifically argues that the limitations period on her claims was statutorily tolled, pursuant to R.C. 2305.15 and 2305.16, each of which we will consider in turn.
 {¶ 27} R.C. 2305.15(B) provides:
 When a person is imprisoned for the commission of any offense, the time of his imprisonment shall not be computed as any part of any period of limitation, as provided in section 2305.09, 2305.10, 2305.11, or 2305.14 of the Revised Code, within which any person must bring any action against the imprisoned person.
Appellant argues that the limitations period on her claims was tolled during the time she was incarcerated due to her criminal charges. We conclude, however, that, by its express terms, R.C. 2305.15(B) is inapplicable to this action. R.C. 2305.15(B) only extends the time for bringing an action against an imprisoned person and has no application to actions brought by an imprisoned person against someone else.Karlen v. Steele (Sept. 15, 2000), Trumbull App. No. 99-T-0076. Consequently, appellant was not entitled to tolling under R.C.2305.15(B).
 {¶ 28} Appellant also argues that the time for bringing her action was tolled, pursuant to R.C. 2305.16, which provides as follows:
 Unless otherwise provided in sections 1302.98, 1304.35, and 2305.04 to 2305.14 of the Revised Code, if a person entitled to bring any action mentioned in those sections, unless for penalty or forfeiture, is, at the time the cause of action accrues, * * * of unsound mind, the person may bring it within the respective times limited by those sections, after the disability is removed. * * *
 After the cause of action accrues, if the person entitled to bring the action becomes of unsound mind and is adjudicated as such by a court of competent jurisdiction or is confined in an institution or hospital under a diagnosed condition or disease which renders the person of unsound mind, the time during which the person is of unsound mind and so adjudicated or so confined shall not be computed as any part of the period within which the action must be brought.
R.C. 1.02(C) defines "of unsound mind" to include "all forms of mental retardation or derangement." Although not defined in the Ohio Revised Code, "derangement" has been equated with insanity. Fisher v. OhioUniversity (1992), 63 Ohio St.3d 484, 488, citing Webster's Third International Dictionary (1986) 607.
 {¶ 29} Where, like here, a defendant meets her initial burden on summary judgment of proving that the statute of limitations is a valid affirmative defense, the plaintiff "ha[s] a burden of proof regarding [her] claim that the tolling statute applied to render the statute of limitation's defense invalid." Heskett v. Roberts (Apr. 27, 1995), Franklin App. No. 94APE09-1411, citing Wright v. Univ. Hosp. ofCleveland (1989), 55 Ohio App.3d 227. It is unclear from appellant's arguments whether she relies on the first paragraph of R.C. 2305.16, claiming that she was of unsound mind at the time her cause of action accrued, or whether she relies on the second paragraph of R.C. 2305.16, claiming that she became of unsound mind after her cause of action accrued. Regardless, to avoid summary judgment, appellant was required to submit evidence demonstrating a genuine issue of material fact regarding her claim that R.C. 2305.16 applied to toll the limitations period. See Casey v. Casey (1996), 109 Ohio App.3d 830, 835.
 {¶ 30} Appellees contend that R.C. 2305.16 is inapplicable because appellant did not present evidence substantiating her assertion that she was of unsound mind. In Bowman v. Lemon (1926), 115 Ohio St. 326,329-330, the Ohio Supreme Court stated that, when a plaintiff alleged that he was "of unsound mind" such that the limitations period should be tolled, a court should consider "whether there is any evidence tending to show any species of mental deficiency or derangement from which the plaintiff was suffering which would prevent him from properly consulting with counsel, preparing and presenting his case, and attending to his affairs, and preclude him from asserting his rights in a court of justice[.]"
 {¶ 31} Appellant first argues that records filed in juvenile court and in the criminal case against her contain evidence that she was of unsound mind as a result of "preexisting mental illness conditions, including but not limited to dementia, debilitating major depression, memory loss, dyslexia, traumatic brain injury, bi-polar disorder and post traumatic stress disorder[.]" The only records from the juvenile case or appellant's criminal case included in the record here are the juvenile complaint, the certified judgment entry from juvenile court awarding legal custody of M.M. to his father, and the trial court's final judgment entry in the criminal case. Despite appellant's assertions, no records from either the juvenile or criminal cases, containing evidence relating to appellant's mental soundness, were filed in this action. Accordingly, the trial court could not consider any such alleged evidence when ruling on appellees' motions for summary judgment, and this court may not consider any such alleged evidence on appeal. SeeState v. Ishmail (1978), 54 Ohio St.2d 402, syllabus ("[a] reviewing court cannot add matter to the record before it, which was not a part of the trial court's proceedings, and then decide the appeal on the basis of the new matter").
 {¶ 32} In addition to her vague references to documents in other cases, appellant also identifies certain documents in the record below in support of her R.C. 2305.16 tolling argument. Specifically, appellant references documents attached to her affidavit of indigency and to her memorandum contra to appellees' second motion for summary judgment.
 {¶ 33} Among the documents attached to appellant's affidavit of indigency is a document from the Franklin County Department of Job and Family Services, dated October 20, 2004, notifying appellant of the termination of her food stamps and Medicaid, based on her failure to provide required documentation of eligibility. An undated document, on letterhead of Southeast, Inc. Recovery and Mental Health Care Services ("Southeast"), states that appellant has no income. The next document is appellant's application for the Central Ohio Transit Authority reduced fare program, dated September 29, 2004. A Southeast case manager completed a portion of the application form to be completed by a licensed medical professional and checked a box indicating that the nature of appellant's disability is physical and explaining that her disability consisted of brain, spine and hip injury, and diabetes. The case manager did not check the pre-printed box to indicate that appellant had a psychological disability. The final document attached to appellant's affidavit of indigency is a Supplemental Security Income Notice from the Department of Health and Human Services, Social Security Administration, dated October 23, 2003, denying appellant's claim for Supplemental Security Income payments. Additionally, appellant submitted, as an attachment to her memorandum contra appellees' second motion for summary judgment, a copy of a Brain Injury Association of Ohio membership card, which states that appellant sustained, suffered, and survived a brain injury.
 {¶ 34} To the extent that appellant relies on the first paragraph of R.C. 2305.16, claiming that she was of unsound mind at the time her causes of action accrued, appellant failed to demonstrate a genuine issue of material fact. Even were we to conclude that the documents appellant references generally created a genuine issue of material fact as to whether she was ever of unsound mind, the documents do not create an issue of fact as to whether she was of unsound mind in 2002, when her causes of action accrued. Accordingly, we conclude that the first paragraph of R.C. 2305.16 does not toll the limitations period on appellant's claims.
 {¶ 35} We likewise conclude that appellant failed to demonstrate an issue of fact regarding her entitlement to tolling under the second paragraph of R.C. 2305.16. To take advantage of the tolling provisions of the second paragraph of R.C. 2305.16, appellant was required to present evidence that she became of unsound mind after the accrual of her causes of action and that she was either adjudicated of unsound mind by a court or was confined in an institution or hospital under a diagnosed condition or disease which rendered her of unsound mind. The record contains no evidence that a court of competent jurisdiction adjudicated appellant as being of unsound mind. In the absence of a court adjudication, the second paragraph of R.C. 2305.16 applies:
 * * * [O]nly when the claimant presents evidence substantiating he or she was of unsound mind and the disease or condition (1) was determined by a psychiatrist or licensed physician who treated the claimant during his confinement to have rendered him of unsound mind, or (2) is generally accepted by the medical community as one causing unsound mind.
Fisher at syllabus. None of the documents attached to either appellant's affidavit of indigency or memorandum contra appellees' second motion for summary judgment reveal that appellant was institutionally confined under a diagnosed condition or disease that rendered her of unsound mind.
 {¶ 36} Appellant's own conclusory allegations that she was of unsound mind at an unspecified time during the limitations period are insufficient to overcome appellees' No. 06AP-829 19 motion for summary judgment. Kotyk v. Rebovich (1993), 87 Ohio App.3d 116, 120 ("[a] general claim of disability, absent specific details, will not toll the time for the running of an applicable statute of limitations"). Moreover, appellant is not competent to render a psychological diagnosis. See Moore v. Schiano (1997), 117 Ohio App.3d 326, 330-331. Upon review, and viewing the evidence in a light most favorable to appellant, we conclude that appellant did not meet her burden on summary judgment of presenting evidence substantiating her claim that R.C.2305.16 tolled the time in which she was required to bring her claims against appellees. Therefore, the trial court did not err in entering summary judgment in favor of appellees on appellant's state law claims.
 {¶ 37} In addition to arguing that appellant's state law claims were time-barred under R.C. 2744.04(A), appellees argued on summary judgment that, to the extent appellant's complaint alleged federal Section 1983 claims, such claims were likewise subject to a two-year statute of limitations and time-barred. "Section 1983 provides a remedy for violations of substantive rights created by the United States Constitution or federal statute."[3] Prohazka v. Ohio State Univ. Bd.of Trustees (Dec. 16, 1999), Franklin App. No. 99AP-2, citingBarnier v. Szentmiklosi (E.D.Mich.1983), 565 F.Supp. 869, 871, reversed in part on other grounds (C.A.6, 1987), 810 F.2d 594, 597. To state a claim under Section 1983, a "plaintiff must establish that: (1) the conduct in controversy was committed by a person acting under color of state law, and (2) the conduct deprived plaintiff of a federal right, either constitutional or statutory." Prohazka. Although the trial court did not expressly determine whether appellant's complaint contained Section 1983 claims, it concluded that any Section 1983 claims would be barred by a two-year statute of limitations.
 {¶ 38} For statute of limitations purposes, Section 1983 claims are characterized as personal injury actions. Owens v. Okure (1989),488 U.S. 235, 240-241, citing Wilson v. Garcia (1985), 471 U.S. 261, 280. Because federal law does not provide a statute of limitations for Section 1983 claims, courts must borrow the applicable statute of limitations from the state in which the cause of action arose.Owens at 240; Wilson at 266. Where a state has multiple statutes of limitations for personal injury actions, the general or residual statute of limitations for personal injury actions applies to Section 1983 claims. Owens at 249-250.
 {¶ 39} In support of their argument that a two-year statute of limitations applies to Section 1983 claims arising in Ohio, appellees rely on Browning v. Pendleton (C.A.6, 1989), 869 F.2d 989, 992, in which the Sixth Circuit Court of Appeals, sitting en banc, appliedOwens and determined that the two-year statute of limitations for bodily injury actions set forth in R.C. 2305.10 was the appropriate statute of limitations for Section 1983 claims arising in Ohio. Based onBrowning, appellees contend that a two-year statute of limitations applies to appellant's Section 1983 claims and that such claims are time-barred because appellant did not file her complaint within two years of the accrual of her claims, as determined above.
 {¶ 40} While appellees correctly state the Sixth Circuit's holding inBrowning, this court has repeatedly refused to follow Browning, concluding that the Sixth Circuit was incorrect in its determination that former R.C. 2305.10 set forth Ohio's general or residual statute of limitations for personal injury actions. In Prohazka, we stated:
 * * * [Although the question of how to characterize section 1983 claims for statute of limitation purposes, and the question of whether Ohio's general or residual statute of limitations should be applied to section 1983 claims are questions of federal law, the question of which Ohio statute of limitations constitutes the state's general or residual statute of limitations is a question of state law. * * *
There, we acknowledged a split among the Ohio appellate districts as to which statute represents Ohio's general or residual statute of limitations for personal injury actions. After reviewing the positions of the Sixth Circuit and various Ohio appellate districts, as well as the statutory language of Ohio's statutes of limitations for personal injury actions, this court concluded, contrary to the holding inBrowning, that the four-year statute of limitations contained in R.C.2305.09(D) is Ohio's general or residual personal injury statute of limitations and, thus, applied to Section 1983 claims arising in Ohio.[4] Id.; see, also, Fowler v. Coleman (Dec. 28, 1999), Franklin App. No. 99AP-319.
 {¶ 41} In its decision and entry granting appellees' first motion for summary judgment, the trial court stated, without citation to any legal authority, that "Section 1983 actions are also subject to a two-year statute of limitations." This conclusion is contrary to our holding inProhazka and constitutes error. Rather, as stated in Prohazka, Section 1983 claims arising in Ohio are subject to a four-year limitations period set forth in R.C. 2305.09(D). Appellant filed her complaint within four years of the conduct alleged in her complaint. Thus, to the extent appellant alleged Section 1983 claims based on such conduct, her claims are timely, and appellees were not entitled to summary judgment based on the statute of limitations.
 {¶ 42} Appellees did not argue before the trial court that appellant's complaint failed to state Section 1983 claims, and, in fact, at oral argument before this court, appellees' counsel conceded that appellant's complaint did allege Section 1983 claims. Additionally, appellees did not argue before the trial court that appellant could present no evidence to prove her Section 1983 claims, relying instead on their statute of limitations argument. Consequently, we express no opinion on the merits of appellant's Section 1983 claims, which the trial court has not yet considered.
 {¶ 43} Appellees' final argument to the trial court in support of their motion for summary judgment was that they were immune from liability. Appellees first argued that they were entitled to immunity, pursuant to R.C. 2151.421(G), which provides immunity from civil or criminal liability to one participating in making a report of child abuse or neglect or participating in good faith in a judicial proceeding resulting from such a report. While R.C. 2151.421(G) may arguably have provided immunity to appellees with respect to appellant's state law claims, the immunity provided therein does not control a federal Section 1983 action, even when that federal cause of action is brought in state court. Cudlin v. Cudlin (1990), 64 Ohio App.3d 249, 256, citingMartinez v. California (1980), 444 U.S. 277, 282.
 {¶ 44} Appellees also argue that they are entitled to qualified immunity. Under the doctrine of qualified immunity:
 * * * [Government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. * * *
Harlow v. Fitzgerald (1982), 457 U.S. 800, 818; Wegener v. City ofCovington (C.A.6, 1991), 933 F.2d 390, 392. The ultimate burden of proof is on the plaintiff to show that the defendants are not entitled to qualified immunity. Id. However, the Sixth Circuit Court of Appeals has explained the procedure for analyzing claims of qualified immunity as follows:
 "Defendants bear the initial burden of coming forward with facts to suggest that they were acting within the scope of their discretionary authority during the incident in question. * * * Thereafter, the burden shifts to the plaintiff to establish that the defendants' conduct violated a right so clearly established that any official in defendants' positions would have clearly understood that they were under an affirmative duty to refrain from such conduct."
Gratsch v. Hamilton Cty. (C.A.6, 2001), 12 Fed.Appx. 193, 201, quotingRich v. City of Mayfield Heights (C.A.6, 1992), 955 F.2d 1092, 1095.
 {¶ 45} The trial court determined that the record contained insufficient evidence for the court to evaluate appellees' claims of immunity. We agree. Although appellees argued that, as employees of FCCS, their filing of the juvenile complaint was a discretionary act within the scope of their employment, appellees offered no evidence in support of that argument. Appellees attached to their first motion for summary judgment an uncertified copy of the juvenile complaint, a document entitled "Client Record of Activity," and a document entitled "Arrest Information," none of which demonstrates that appellees' acts, as set forth in appellant's complaint, were discretionary acts or within the scope of their employment by FCCS.[5] Because appellees failed to meet their initial burden of coming forward with facts to suggest that they were entitled to qualified immunity, the burden did not shift to appellant to refute appellees' entitlement to qualified immunity. Accordingly, appellees were not entitled to summary judgment on the basis of qualified immunity. Of course, we express no opinion on whether appellees will ultimately prevail on their claim of qualified immunity on remand to the trial court.
 {¶ 46} In conclusion, we find that the trial court properly granted summary judgment in favor of appellees on appellant's state law claims, as such claims are barred by the two-year statute of limitations set forth in R.C. 2744.04(A). Accordingly, we overrule appellant's assignment of error and affirm the judgment of Franklin County Court of Common Pleas with respect to such claims. However, we further find that the trial court erred in granting summary judgment in favor of appellees on appellant's Section 1983 claims, because appellant filed such claims within the applicable four-year statute of limitations and because appellees failed to demonstrate their entitlement to qualified immunity. Thus, with respect to appellant's Section 1983 claims, we sustain appellant's assignment of error, reverse the judgment of the Franklin County Court of Common Pleas, and remand this action for further proceedings consistent with this opinion and the law.
Judgment affirmed in part, reversed in part, and cause remanded.
BROWN and McGRATH, JJ., concur.
[1] R.C. 2151.44 provides:
"If it appears at the hearing of a child that any person has abused or has aided, induced, caused, encouraged, or contributed to the dependency, neglect, or delinquency of a child or acted in a way tending to cause delinquency in such child, or that a person charged with the care, support, education, or maintenance of any child has failed to support or sufficiently contribute toward the support, education, and maintenance of such child, the juvenile judge may order a complaint filed against such person and proceed to hear and dispose of the case as provided in sections 2151.01 to 2151.54, inclusive, of the Revised Code.
"On the request of the judge, the prosecuting attorney shall prosecute all adults charged with violating such sections."
[2] In part, R.C. 2151.419(A)(1) requires a court to determine, before continuing the removal of a child from the child's home, "whether the public children services agency or private child placing agency * * * has made reasonable efforts * * * to eliminate the continued removal of the child from the child's home, or to make it possible for the child to return safely home."
[3] In pertinent part, Section 1983 provides that "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State * * *, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress[.]"
[4] In Luckey v. Butler Cty. (S.D.Ohio 2006), Case No. 1:06CV123, the United States District Court for the Southern District of Ohio recognized the conflicting opinions of the Sixth Circuit and various Ohio appellate districts and certified to the Ohio Supreme Court the question: "Which Ohio statute of limitations applies to a claim brought under 42 U.S.C. § 1983 in the State of Ohio?"
[5] Additionally, we note that the evidence attached to appellees' first motion for summary judgment is not proper summary judgment evidence. Pursuant to Civ.R. 56(C), a court may consider only "the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact, if any, timely filed in the action" when considering a motion for summary judgment. The proper procedure for introducing evidentiary matter of a type not listed in Civ.R. 56(C) is to incorporate the material by reference into a properly framed affidavit. Martin v.Central Ohio Transit Auth. (1990), 70 Ohio App.3d 83, 89, citingBiskupich v. Westbay Manor Nursing Home (1986), 33 Ohio App.3d 220. The documents attached to appellees' first motion for summary judgment do not fall within the exhaustive categories of evidence listed in Civ.R. 56(C), and appellees failed to incorporate such documents into a properly framed affidavit.